UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES OF AMERICA**        )
                                    )
        v.                    ) Criminal Action No. 13-200 (RWR)
                                    )
**JEROME COBBLE,**                  )
                                    )
        **Defendant.**         )
_____)

## MEMORANDUM OPINION AND ORDER

Defendant Jerome Cobble moves for a judgment of acquittal, or in the alternative, a new trial on his conviction for conspiracy to launder monetary instruments.  Defendant Cobble's Mot. for a J. of Acquittal, or in the Alternative, a New Trial, ECF No. 390 ("Cobble's Mot.").  The government opposes, arguing that Cobble was properly convicted of conspiracy to launder monetary instruments, and that it is not in the interest of justice to grant Cobble a new trial.  United States' Mem. in Opp'n to Def. Jerome Cobble's Mot. for J. of Acquittal, or in the Alternative, a New Trial, ECF No. 400 ("Gov't Opp'n").  Because a rational trier of fact viewing all the trial evidence most favorably to the government could find beyond a reasonable doubt that Cobble conspired to launder monetary instruments, and because Cobble does not present circumstances compelling a new

trial in the interest of justice, Cobble's motion will be denied.

## BACKGROUND

Jerome Cobble was indicted on one count of conspiracy to distribute and possess with intent to distribute one hundred grams or more of heroin and marijuana, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1), and 846, and one count of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). Superseding Indictment, ECF No. 259.[1] After a jury trial, Jerome Cobble was acquitted of the drug conspiracy count and found guilty of conspiring to launder monetary instruments.

Cobble and Jermaine Washington, an admitted veteran drug dealer, shared a uniquely close relationship; although actually cousins, they were raised in the same household by Cobble's mother as brothers from a young age. Gov't Opp'n at 6-7; Cobble's Mot. at 5, 7. Cobble maintained a relationship throughout Washington's various stints of incarceration. Gov't Opp'n at 6-7. In or about July 2012, Washington reached out to Cobble to help Washington purchase a new vehicle. Gov't Opp'n at 9-10; Cobble's Mot. at 5. Washington had been using a Nissan Altima that was titled in Cobble's name. Cobble's Mot. at 6.

---

[1] He was also charged with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. That count was severed prior to trial and remains pending. See 11/12/2014 Minute Entry.

He wanted to trade it in, though, since it had been damaged in a car accident and thus had become "under water" on the loan. Gov't Opp'n at 9; Cobble's Mot. at 6. Washington shopped around the Washington, D.C. area for a vehicle to purchase, ultimately settling on a Lexus SUV at a car dealership in Vienna, Virginia. Gov't Opp'n at 9; Cobble's Mot. at 5-6. Washington made a down payment to the dealership of approximately $3,000. He testified, and the government did not refute, that the $3,000 came from the proceeds of gambling in Atlantic City, New Jersey. Gov't Opp'n at 9; Cobble's Mot. at 6. The Lexus SUV was titled, registered, and insured in Cobble's name. Cobble's Mot. at 5. Washington testified that he and Cobble agreed that Washington would deposit the monthly loan payments for the Lexus SUV into Cobble's bank account. Gov't Opp'n at 9. The Lexus SUV was stolen, though, before any initial loan payment was made. Cobble's Mot. at 6.

At trial, during cross-examination of Washington by Cobble's counsel, Washington engaged in an unsolicited, emotional, and inconsolable diatribe expressing his regret for getting Cobble "caught up" in this matter. Gov't Opp'n at 26; Cobble's Mot. at 18-20.

The jury found Cobble guilty of conspiring to launder monetary instruments, and Cobble now timely moves for a judgment of acquittal or a new trial.[2]

## DISCUSSION

I.  MOTION FOR A JUDGMENT OF ACQUITTAL

Federal Rule of Criminal Procedure 29 requires "the court on the defendant's motion [to] enter a judgment of acquittal for any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "The motion for judgment of acquittal may be granted where 'there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt.'" United States v. Gray-Burriss, Criminal Action No. 10-178 (RWR), 2013 WL 460220 at *1 (D.D.C. Feb. 6, 2013) (quoting United States v. Byfield, 928 F.2d 1163, 1165 (D.C. Cir. 1991)). "The evidence must be viewed in the light most favorable to the government." Id. (same).

The statute criminalizing conspiring to launder monetary instruments, 18 U.S.C. § 1956(h), provides that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the

---

[2] Cobble initially moved for a judgment of acquittal after the close of the government's evidence, and again immediately after the verdict was returned by the jury. The Court reserved ruling on both of those motions.

object of the conspiracy."  In order to sustain Cobble's conviction, there must be sufficient evidence such that a rational trier of fact could have found beyond a reasonable doubt that Cobble (1) agreed to commit a money laundering offense, and (2) knowingly and voluntarily participated in that agreement.  See United States v. Broughton, 689 F.3d 1260, 1280 (11th Cir. 2012) ("[U]nder 18 U.S.C. § 1956(h), only two elements of a conspiracy need be proven: (1) agreement between two or more persons to commit a money-laundering offense; and (2) knowing and voluntary participation in that agreement by the defendant."); see also United States v. Farrell, Criminal Action No. 03-311-1 (RWR), 2005 WL 1606916 at *8 (D.D.C. July 8, 2005) ("[The defendant] stands convicted of a conspiracy to commit money laundering in which the government's required proof included simply the existence of the unlawful agreement and [the defendant's] willful joinder in it.").  A defendant knowingly or willfully participates in the conspiracy when he knows and intends to further its purpose.  See United States v. Fuchs, 467 F.3d 889, 906 (5th Cir. 2006) ("To establish conspiracy to commit money laundering, the government must prove (1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal

purpose."); United States v. Wittig, 575 F.3d 1085, 1103 (10th Cir. 2009) (same).

There are two money laundering offenses that Count Two of the indictment alleges that Cobble conspired to commit with the Lexus purchase. One is using illegal drug proceeds to promote illegal drug sales, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). The other is using illegal drug sale proceeds to conceal and disguise the source of drug sale proceeds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Cobble argues that "the government has utterly failed to show any effort or intent to disguise that illegal funds formed any part of the transaction," and therefore no rational trier of fact could find beyond a reasonable doubt that Cobble is guilty of conspiracy to launder monetary instruments. Cobble's Mot. at 17.

Cobble attacks only one potential purpose for the money laundering conspiracy - - disguising or concealing the source of the proceeds. But since the indictment charged him with two potential purposes, either if proven is sufficient to uphold the conviction. At trial, the government elicited testimony, primarily from Washington, that Washington sold and distributed heroin both before and after purchasing the Lexus SUV, Cobble's Mot. at 13-14, and presented evidence that Washington on various occasions used a vehicle to deliver narcotics to buyers.

Cobble's Mot. at 14 n.3. This evidence along with evidence of Cobble's close relationship with Washington could lead a rational trier of fact to infer that Cobble knew that the purpose of buying the Lexus SUV was for Washington to continue to be able to distribute drugs - - satisfying the proof of conspiring to violate § 1956(a)(1)(B)(i). Accordingly, Cobble's motion for a judgment of acquittal will be denied.

II. MOTION FOR A NEW TRIAL

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The defendant must carry the burden in demonstrating that a new trial is "in the interest of justice." United States v. Machado-Erazo, 986 F. Supp. 2d 39, 44 (D.D.C. 2013) (citing United States v. Mangieri, 694 F.2d 1270, 1285 (D.C. Cir. 1982)). "However, a new trial should be granted only if the error was not harmless and affected the defendant's substantial rights." Id. (citing United States v. Walker, 899 F. Supp. 14, 15 (D.D.C. 1995)). Once an error affecting a defendant's substantial rights is uncovered, the government bears the burden of proving that the error was harmless. See United States v. Simpson, 430 F.3d 1177, 1183-1184 (D.C. Cir. 2005) (explaining that when a defendant timely objects to an alleged error in the district court the harmless error standard

applies and "[t]he government bears the burden of proving that prejudice did not result from the error."). The decision to grant a new trial is "committed to the sound discretion of the trial judge, and is subject to reversal only for abuse of discretion or misapplication of the law." Machado-Erazo, 986 F. Supp. 2d at 44 (quoting United States v. Reese, 561 F.2d 894, 902 (D.C. Cir. 1977)) (internal quotation marks and alterations omitted).

Cobble requests a new trial "based on the testimony and demeanor of Jermaine Washington." Cobble's Mot. at 17. Essentially, Cobble argues that Washington's unsolicited rant prejudiced the jury and placed Cobble in a "'can't win' position." Id. at 21. While dramatic, Washington's unsolicited outburst expressed Washington's remorse for getting Cobble involved in the legal jeopardy that brought Cobble to trial. It is also not extraordinary that a testifying government informant would yield incriminating testimony or evidence, be it on direct examination or cross-examination. That outburst did not rise to a level that warrants a new trial. United States v. Bamberger, 456 F.2d 1119, 1128 (2d Cir. 1972) ("Courtroom outbursts and disruptions . . . although regrettable and deplorable, cannot be seized upon in and of themselves as justifications for retrials."). Accordingly, Cobble's motion for new trial will be denied.

CONCLUSION AND ORDER

Because sufficient evidence was presented at trial such that a rational factfinder could find beyond a reasonable doubt that Cobble conspired to launder monetary instruments, and Washington's unsolicited outburst is not a sufficient basis for finding that a new trial is in the interest of justice, it is hereby

ORDERED that Cobble's Motion for a Judgment of Acquittal or, in the Alternative, a New Trial [390] be, and hereby is, DENIED.

SIGNED this 2nd day of September, 2015.

```
                              _____/s/_____
                              RICHARD W. ROBERTS
                              Chief Judge
```